UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-449-MOC

| | |
|---|---|
| **DAVID EUGENE HAYWOOD,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **KILOLO KIJAKAZI,** **Acting Commissioner of Social Security**, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 8, 12). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of Defendant's final decision that Plaintiff was not disabled within the meaning of Title II of the Social Security Act ("Act").

For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

I. ADMINISTRATIVE HISTORY

On June 6, 2017, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging disability since April 28, 2017. (Doc. No. 6, Administrative Transcript ("Tr.") 58, 274, 293). Plaintiff's claim was denied initially and denied again upon reconsideration. (Tr. 165, 177). Plaintiff appealed the decision through the administrative stages of the Social Security system. Ultimately, Plaintiff and her attorney representative appeared before an Administrative Law Judge ("ALJ"), along with an impartial vocational expert, on June 19, 2019. (Tr. 71–96). The ALJ denied Plaintiff's claim for disability benefits in a decision dated July 22, 2019. (Tr.

1

55–66). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1–7).

Having exhausted his administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff suffers from–among other ailments–lacrimal canalicular stenosis of the right eye, essential hypertension, deep vein thrombosis in the right leg, mild degenerative disease of the left knee with joint space loss and osteophytosis, post-phlebitis syndrome, heterozygous factor V Leiden mutation, chronic leg pain, seasonal allergies, a brain aneurism, and pulmonary embolism. (Tr. 354, 385). On June 6, 2017, Plaintiff filed a claim for disability insurance benefits under Title II of the Act, alleging disability since April 28, 2017 due to blood clots in the lungs and right leg, an aneurysm on the left side of the head, external dacryocystorhinostomy, left knee problems, factor five Leiden, and right eye issues. (Tr. 58, 274, 293).

The ALJ followed the five-step sequential evaluation used by the Social Security Administration in his analysis of Plaintiff's alleged disability. See 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 28, 2017, Plaintiff's alleged disability onset date. (Tr. 58, 274, 293). At step two, the ALJ determined Plaintiff had the following medically determinable and severe impairments: history of deep vein thrombosis, osteoarthritis, obesity, and history of unruptured cerebral aneurysm. (Tr. 60–61). At step three, the ALJ concluded that, during the relevant period, none of the Plaintiff's impairments, nor any combination thereof, met or medically equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 61)

2

Before proceeding to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). Specifically, the ALJ found that Plaintiff had the RFC to perform a range of light work with additional limitations, as defined in 20 C.F.R. § 404.1567(b). (Tr. 61–64). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 64). However, at step five the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and therefore Plaintiff was not disabled within the meaning of the Act from June 1, 2017, Plaintiff's alleged disability onset date, through May 25, 2021, the ALJ's decision date. (Tr. 64–65).

### III. STANDARD OF REVIEW

#### a. Substantial Evidence Review

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. Review by a federal court is not de novo. Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986). Rather, inquiry in disability cases is limited to whether the ALJ (1) supported her findings with substantial evidence and (2) applied the correct law. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). In other words, substantial evidence is enough relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing

3

Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

An ALJ must also apply the correct law. A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

b. **Sequential Evaluation**

The Social Security Administration uses a five-step sequential review process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a) and 416.920(a). An ALJ evaluates a disability claim as follows:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.  An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. Residual Functional Capacity (RFC)

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Id. RFC is the most someone can do despite their mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). To determine RFC, the

adjudicator is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R § 404.1545(a)(3).

The ALJ must support each conclusion with evidence. SSR 96-8p requires the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

In other words, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Mascio v. Colvin, 780 F.3d 632, 694 (4th Cir. 2015) (quoting Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000))). In formulating the RFC, the ALJ may not just pick and choose from the evidence but must consider it in its entirety. Kirby v. Astrue, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010).

### IV. FINDINGS AND CONCLUSIONS

Plaintiff alleges two errors: (1) The ALJ failed to give proper weight to the opinion of Dr. David Hockey, a treating physician, that the plaintiff suffers from chronic deep vein thrombosis of the proximal vein of the right lower extremity and chronic leg pain; and (2) the ALJ failed to give proper weight to psychologist Dr. George Popper, PhD's opinion that "it would be extremely, problematic for the plaintiff to engage in work related activities" given Plaintiff's alleged mental health and cognitive abilities. (Doc. No. 8-1 at 12). The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not

6

Case 3:22-cv-00449-MOC   Document 13   Filed 08/01/23   Page 6 of 11

whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision regarding Plaintiff's DVT, chronic leg pain, and mental health are supported by substantial evidence. However, the ALJ's decision regarding Plaintiff's cognitive abilities is not supported by substantial evidence.

### a. The ALJ Sufficiently Considered Plaintiff's Subjective Complaints and the Opinion of Dr. Hockey Concerning Plaintiff's Deep Vein Thrombosis (DVT) and Chronic Leg Pain.

The ALJ properly considered the findings of Dr. Hockey concerning Plaintiff's DVT and chronic leg pain. Relevant medical records from Dr. Hockey list DVT and chronic leg pain under both the "Impression" and "Diagnosis" sections. (Tr. 346, 352, 373–74). The relevant records further state: "Patient has chronic leg pain secondary to a DVT, has used tramadol at night, working well." And "Problems: None, patient is on life-long blood thinner." (Tr. 346, 355). Dr. Hockey's records do not discuss Plaintiff's DVT and Chronic Leg Pain beyond these comments. Both DVT and secondary chronic leg pain were discussed at length in the oral hearing and in the ALJ's final decision. (Tr. 62–63, 79, 81).

Although the ALJ did not specifically cite Dr. Hockey's limited records regarding Plaintiff's DVT and chronic leg pain, the ALJ supported their conclusion with sufficient evidence. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (holding that an ALJ is not required to specifically discuss every piece of evidence in the decision) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).

The ALJ considered the entire record, including Plaintiff's testimony and statements to his medical providers, Plaintiff's history of treatment for his leg, the relevant objective medical evidence, medical opinions, and prior administrative medical findings. (Tr. 60–64). Specifically, the ALJ referenced records from visits to Dr. Kennard and Indian Trail Family Medicine, visits with Steve Lister, PA, and the opinion of Dr. Hillman. (Tr. 62–64). Moreover, contrary to Plaintiff's brief, the ALJ did not fail to consider the dosage of tramadol prescribed to Plaintiff as evidence of chronic leg pain. This was discussed at length at oral hearing. (Tr. 88–92).

This evidence supported the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his DVT and leg pain were not consistent with the entire record. (Tr. 62). Accordingly, the ALJ properly considered Plaintiff's subjective complaints of pain and Dr. Hockey's opinion concerning Plaintiff's DVT and chronic leg pain.

### b. The ALJ Sufficiently Considered Dr. Popper's Opinion Concerning Plaintiff's Mental Health, but did not Support Their Decision Concerning Plaintiff's Cognitive Abilities with Substantial Evidence.

The ALJ's determination as to Plaintiff's mental health impairment is supported by substantial evidence. Plaintiff's attorney referred Dr. Popper to Plaintiff. While a referral alone does not discredit a doctor's evaluation, it can be considered and is a fact that raises skepticism. See Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing Reddick v Chater, 157 F.3d 715, 726 (9th Cir. 1998)). Here, the ALJ considered the referral of Dr. Popper, along with other relevant evidence such as a lack of contemporaneous mental health treatment and lack of consistency in the record, and found Dr. Popper's medical opinion unpersuasive. (Tr. 60–61). Indeed, while a report from a Licensed Clinical Social Worker (LCSW) at Levine Cancer Institute noted Plaintiff was "becoming depressed," Plaintiff himself commented that he was

8

"doing much better" after seeing Dr. Popper. (Tr. 471). Additionally, this LCSW rated Plaintiff's "Functional Disability – Emotional Severity" as "A little." Tr. 469. The remaining record shows no indication of disabling mental health concerns or contemporaneous treatment. The ALJ, considering the entirety of the record, applied the factors of consistency and supportability to the determination of Dr. Popper's persuasiveness and therefore supported their determination with substantial evidence. 20 C.F.R. § 404. 1520c(a), (c)(1)-(5).

Plaintiff notes that the evaluation of Dr. Popper included not only issues of mental health, but cognitive abilities such as reading, spelling, and math as well. (Doc. No. 8-1 at 12). Plaintiff points out that the ALJ did not provide this information to the vocational expert to consider in determining whether there were jobs in the national economy that Plaintiff could perform. (Id.). The ALJ noted Plaintiff's educational level, his ability to speak English, that Plaintiff did not allege any mental impairments in his application for disability benefits, and cited 20 C.F.R § 404.1564. (Tr. 61). In relevant part, 20 C.F.R. § 404.1564 states "We generally consider that someone with [high school level] educational abilities can do semi-skilled through skilled work." 20 C.F.R § 404.1564(b)(4). However, this statute also states: "Formal education that you completed many years before your impairment began […] may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. […] [I]f there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R § 404.1564(b).

While Plaintiff has a high school degree, Dr. Popper's evaluation suggests that Plaintiff's educational abilities are below his formal education level. Dr. Popper's evaluation supports Plaintiff's statements about his reading and spelling abilities. A summary of the WRAT-4 test

9

applied by Dr. Popper shows that Plaintiff's word reading ability is in the "borderline range" and equal to that of a fourth grader. (Tr. 410). It also shows that Plaintiff's spelling abilities are in the "extremely low range" and equal to that of a third grader. (Tr. 411). There are no other records to assess the supportability or consistency of this finding.

Nonetheless, the ALJ did not address the persuasiveness of Dr. Popper's evidence concerning Plaintiff's reading or writing capabilities in the final decision, and did not provide this information to the vocational expert for consideration in calculating the number of jobs available in the national economy that Plaintiff could perform. Therefore, the ALJ's determination of disability is not supported by substantial evidence. It may be found that Plaintiff's educational abilities are limited or less considering the word reading and spelling abilities evaluated by Dr. Popper. Because Plaintiff is fifty-four years old, he is closely approaching advanced age. 20 C.F.R. § 404.1563(d). Under 20 C.F.R. § 404 Subpart P Rule 201.09, a finding that Plaintiff's educational level is limited or less may lead to a finding that he is qualified as disabled.

## V. CONCLUSION

In sum, the Court agrees with Plaintiff that the ALJ erred by failing to adequately consider or explain the evaluation of Plaintiff's disability by not addressing the intellectual abilities of the Plaintiff. Thus, this matter is remanded for further administrative proceedings consistent with this Order.

Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. No. 8) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 12) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

Signed: July 31, 2023

Max O. Cogburn Jr
United States District Judge